## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EVANS**, *et al.*, | : | **CIVIL ACTION NO. 3:22-cv-1931** |
| **Plaintiffs,** | : | |
| **v.** | | **(JUDGE MANNION)** |
| | : | |
| **PENNSYLVANIA DEPARTMENT OF CORRECTION OFFICER RAYBUCK,** | : | |
| | : | |
| **Defendant.** | | |

## <u>MEMORANDUM</u>

Presently before the court is Defendant's, Pennsylvania Department of Corrections Officer Raybuck, motion to dismiss (Doc. 18) the Plaintiffs', Warren Evans and Larry Fason, *pro se* Section 1983 action (Doc. 1), alleging violations of Plaintiffs' First and Fourteenth Amendment rights. For the reasons discussed below, the court will **GRANT** Defendant's motion and dismiss with prejudice.

## I.    <u>BACKGROUND</u>

Plaintiffs are in the custody of the Pennsylvania Department of Corrections ("DOC") at the State Correctional Institution located in Bellefonte, PA ("SCI-Rockview"), where they worked as culinary staff. (Doc. 1, ¶¶4-5). Between 1:00 pm and 3:30 pm, the culinary staff is authorized by

the culinary supervisors to sit and eat at any table in the staff dining hall before preparation of the evening meal. (*Id.*).

On July 28, 2022, between 2:30 pm and 3:00 pm, Plaintiffs were seated on a table in the staff dining hall table, eating their meals, when Corrections Officer Raybuck ("Defendant" or "Raybuck") stepped in and ordered them "to get up and go sit and eat [their] food in the dishwashing room." (Doc. 1, ¶9). Plaintiffs, who are black, were ordered to eat in the dishwashing room while two other culinary inmate workers, who are white and seated at a separate dining hall table, were not asked to leave. Instead, Raybuck merely asked the other culinary inmate workers "what's on the evening meal" and then left. (*Id.*).

Plaintiffs did not follow Raybuck's order and instead spoke with culinary supervisor, Mr. Smitey, informing him about the event. (Doc. 1, ¶9). "Supervisor Smitey stated that C/O Raybuck is wrong and that [Plaintiffs] are allowed to sit and eat at the staff dining hall tables when no staff is present[] during the above time." (*Id.*). Supervisor Smitey then spoke with Raybuck about the issue. (*Id.*). Regardless of Raybuck's ineffectual order, Plaintiffs Evans and Fason each filed grievances (Nos. 991473 and 991477), on August 3 and August 4, 2022, respectively, claiming that the order made by

Raybuck was motivated by race and that they suffered racial discrimination. (*Id.*, ¶¶10-11).

On the same day of Plaintiff Fason's grievance filing, Raybuck allegedly "stormed into the dining hall and came straight at [Plaintiff] Fason and stated you are fired for using the staff microwave where he work[s]." (Doc. 1, ¶12). Plaintiff Fason then reported his firing to his supervisors who told him that he was not fired and to return to work. (*Id.*). Supervisor Smitey and the other supervisors then told Raybuck that Plaintiff Fason had permission to use the microwave at certain times.[1] (*Id.*). Yet, regardless of Raybuck's ineffectual firing, Plaintiff Fason nevertheless filed a grievance (No. 992782) claiming that the transpiring event was "harassment by C/O Raybuck" and amounted to "an adverse action" taken in retaliation for Plaintiffs' previous filing against him. (*Id.*, ¶¶ 12-13).

On August 8, 2022, Plaintiffs and over fifty other staff dining hall workers, including culinary inmates and stewards such as supervisor Smitey, were called into the dining hall.[2] (Doc. 1, ¶14). There, Raybuck allegedly told everyone assembled:

[B]ecause you have filed racial discrimination against me the following

---

[1] Specifically, "when nobody such as staff is eating in the dining hall[.]" (Doc. 1, ¶12).

[2] Also referred to by Plaintiffs as "chow hall." (Doc. 1, ¶14).

actions will be taken against you I am going to be strict on you, from now on nobody will be allowed to drink coffee while they work and everybody who works in the staff hall and eat there (sic) food in the chow hall with the rest of the workers.

(Doc. 1, ¶14).

Supervisor Smitey protested, telling Raybuck he lacked authority to control the culinary workers and their operations, and staff dining hall workers were allowed to eat and sit in the hall. (Doc. 1, ¶14). Plaintiffs allege that Raybuck's statement was made in retaliation for their previous grievance filings and their exercised First Amendment right to petition for redress. (*Id.*, ¶¶14, 22).

On December 5, 2022, the inmate-Plaintiffs filed a *pro se* complaint pursuant to 42 U.S.C. §1983 against Corrections Officer Raybuck. (Doc. 1).[3] Such complaint was later amended on January 17, 2023. (Doc. 14). Defendant Raybuck subsequently moved to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b). (Doc. 18). Contemporaneously therewith,

---

[3] Plaintiffs titled the Complaint as "Class Action Allegation." (Doc. 1, p. 1). Defendant argues that if the action is construed as a class action, Plaintiffs failed to meet the numerosity, typicality, and adequate representation requirements to certify a class pursuant to Fed. R. Civ. P. 23. The Court need not visit this argument since Plaintiffs' Complaint is most reasonably understood as filed under Fed. R. Civ. P. 8(a) and not a class action under Fed. R. Civ. P. 23.

Plaintiff Evans moved to strike Defendant Raybuck's motion, (Doc. 23), and put forward various requests for discovery upon Defendant Raybuck. (*See* Docs. 26 and 27). Defendant Raybuck moved for a stay of discovery pending the close of such pleadings. (Doc. 29). Shortly thereafter, Plaintiff Evans moved for summary judgment, twice. (Docs. 35 and 37). Various supporting briefs have been filed and these motions are ripe for review.

## II.    **LEGAL STANDARD**

In accordance with Fed. R. Civ. P. 12(b)(6), the court may dismiss a complaint for "failure to state a claim upon which relief can be granted." When reviewing a motion to dismiss under Rule 12(b)(6), "[w]e must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010). In making that determination, we "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

"A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a)." *I.H. ex rel. D.S. v. Cumberland Valley Sch. Dist.*, 842 F. Supp. 2d 762, 769–70 (M.D. Pa. 2012). "Under

Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). The statement required by Rule 8(a)(2) must give the defendant fair notice of the nature of the plaintiff's claim and of the grounds upon which the claim rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Detailed factual allegations are not required, but more is required than "labels," "conclusions," or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). "A complaint has to 'show' such an entitlement with its facts." *Id.*

In considering whether a complaint fails to state a claim upon which relief can be granted, the court "'must accept all facts alleged in the complaint as true and construe the complaint in the light most favorable to the nonmoving party.'" *Krieger v. Bank of Am., N.A.*, 890 F.3d 429, 437 (3d Cir. 2018) (quoting *Flora v. Cty. of Luzerne*, 776 F.3d 169, 175 (3d Cir. 2015)). But a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). A court also need not "assume that a ... plaintiff

can prove facts that the ... plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Following *Twombly* and *Iqbal*, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (footnote and citations omitted) (quoting *Iqbal*, 556 U.S. at 675, 679).

With the aforementioned standards in mind, a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond a doubt that the

plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Further, the Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

Judged against these legal guideposts, Plaintiffs' complaint is fatally flawed in a number of respects, as set forth below, and is dismissed with prejudice given the futility of allowing further amendments thereto.

## III.   **DISCUSSION**

Defendant moves to dismiss the complaint on the following grounds: (1) any official capacity claims must be dismissed because they are barred by the Eleventh Amendment; (2) Plaintiffs failed to state an equal protection claim against Defendant; and (3) Plaintiffs failed to state a retaliation claim against Defendant. By way of a motion to strike, Plaintiffs did not address Defendant's arguments but argued instead that Defendant Raybuck's motion should be stricken as he "forfeited and waived all rights to defenses" when the Secretary's Office of Inmate Grievances and Appeals allegedly failed to issue final appeal decisions on their grievances in a timely fashion. (Doc. 23,

pp. 1-2). The Court disagrees with Plaintiffs and will address each argument in turn below.

### A. Timeliness of Grievance Appeal Decision

The Department of Corrections has an Inmate Grievance System, set forth in DC-ADM 804, which permits any inmate to seek review of problems that may arise during the course of confinement. *See* 37 PA. CODE §93.9(a); PA. DEP'T OF CORR., No. DC-ADM 804. After an attempt to resolve any problems informally, an inmate may submit a written grievance to the Facility's Grievance Coordinator for initial review. This must occur within fifteen days after the events upon which the claims are based. Within fifteen days of an adverse decision by the Grievance Coordinator, an inmate may then appeal to the Facility Manager of the institution. Thereafter, within fifteen days of an adverse decision by the Facility Manager, an inmate may file a final appeal to the Secretary's Office of Inmate Grievances and Appeals. An appeal to final review cannot be completed unless an inmate complies with all established procedures. An inmate must exhaust all three levels of review and comply with all procedural requirements of the grievance review process in order to fully exhaust an issue. *See Booth v. Churner*, 206 F.3d 289, 293 n. 2 (3d Cir. 2000) (outlining Pennsylvania's grievance review process); *Ingram v. SCI Camp Hill*, 448 F. App'x 275, 279 (3d Cir. 2011) (same). An

inmate's (and not a prison official's) use of administrative remedies is instructive because the Prison Litigation Reform Act of 1996 (the "PLRA") mandates that inmates properly exhaust their administrative remedies before filing suit in federal court—a requirement which demands compliance with an agency's deadlines and procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006); *Oriakhi v. United States*, 165 F. App'x 991, 993 (3d Cir. 2006) ("[A] prisoner must exhaust all available administrative remedies prior to filing suit.").

Here, Plaintiffs attempt to reverse the exhaustion requirement and use it offensively to disarm Defendant of any defenses in federal court, claiming that "Plaintiffs are entitled to the relief sought in the original complaint" because the prison's issued final appeal decisions on their grievances were "untimely." (Doc. 23, p. 1). This is both a misapplication and misunderstanding of the law.

"A state-created prison grievance procedure is simply a procedural right and does not confer any substantive right upon an inmate." *Massey v. Hetman*, 259 F.3d 641, 647 (7th Cir. 2001); *see also Burnside v. Moser*, 138 F. App'x 414, 416 (3d Cir. 2005) ("Inmates do not have a constitutionally protected right to the prison grievance process.") (citation omitted). Consequently, because prison grievance procedure does not confer any

substantive constitutional rights upon prison inmates, the prison official's failure to comply with grievance procedure is not actionable. *Pryor-El v. Kelly*, 892 F.Supp. 261, 275 (D.D.C. 1995); *see also*, *Paluch v. Sec'y Pennsylvania Dept. Corr.*, 442 F. App'x 690, 695 (3d Cir. 2011) (in reviewing an inmate's failure to properly investigate an abuse claim, the Third Circuity affirmed dismissal finding that "there is no apparent obligation for prison officials to investigate prison grievances."); *Alexander v. Gennarini*, 144 Fed. Appx. 924 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for §1983 liability). Accordingly, Plaintiffs' argument is without merit and their motion to strike is denied.

### B. Official Capacity Claims

Defendant first asserts that the claims against him in his official capacities must be dismissed because he enjoys Eleventh Amendment immunity from suit for acts taken in his official capacity. (Doc. 19, p. 7). The Court agrees.

Personal capacity suits under section 1983 seek to recover money from a government official, as an individual, for acts performed under color of state law. *Gregory v. Chehi*, 843 F.2d 111, 120 (3d Cir. 1988). Official capacity suits, in contrast, generally represent an action against an entity of which the government official is an agent. *Id.*; *see also Monell v. Dep't of*

*Social Servs.*, 436 U.S. 658, 690 n. 55 (1978). When suits are brought against state officials in their official capacities, those lawsuits are treated as suits against the state. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). However, the doctrine of sovereign immunity, established by the Eleventh Amendment, protects states, such as the Commonwealth of Pennsylvania, from suits by citizens. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100-01, 117 (1984); *Seminole Tribe v. Florida*, 517 U.S. 44, 54 (1996); *Lavia v. Pennsylvania*, 224 F.3d 190, 195-96 (3d Cir. 2000). That immunity runs to state officials if they are sued in their official capacity and the state is the real party upon which liability is sought. *Scheuer v. Rhodes*, 416 U.S. 232, 237-38 (1974).

Here, Congress has not abrogated the immunity regarding Plaintiffs' claims, nor has Pennsylvania waived this grant of immunity. *See* 42 Pa. C.S.A. §8521(b). Thus, Plaintiffs' §1983 claims against the Defendant in his official capacity is barred by sovereign immunity. *See Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 (3d Cir. 2010). Important to note though, the Court does not construe Plaintiffs' Complaint as putting forward such a claim, but to the extent it does, Defendant is entitled to dismissal on this ground.

### C. Plaintiffs' Equal Protection Claim

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyer v. Doe*, 457 U.S. 202, 216 (1982)). In order to establish an equal protection claim, a plaintiff must show that: (1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person. *See Vurimindi v. City of Phila.*, 521 F. App'x 62, 65 (3d Cir. 2013) (citing *Andrews v. City of Phila.*, 895 F.2d 1469, 1478 (1990)). To be "similarly situated," parties must be "alike in all relevant aspects." *Startzell v. City of Phila.*, 533 F.3d 183, 203 (3d Cir. 2008). As well, to demonstrate an equal protection violation, an inmate has the burden of proving, under the second prong, the existence of purposeful discrimination. *Hernandez v. New York*, 500 U.S. 352, 111 (1991); *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987). Official action does not violate the Equal Protection Clause solely because it

results in a disproportionate impact; proof of discriminatory intent or purpose is required to show a violation. *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265 (1977); *Washington v. Davis*, 426 U.S. 229, 239 (1977); *Stehney v. Perry*, 101 F.3d 925, 938 (3d Cir. 1996). Plaintiff carries the burden of showing intentional or purposeful discrimination. *PG Pub. Co. v. Aichele*, 705 F.3d 91, 115 (3d Cir. 2013).

Here, Plaintiffs claim that Defendant discriminated against them on the basis of race when he ordered them to get up from their table and eat their food in the dishwashing room while allowing two other white inmates to remain seated at their table in the staff dining hall. (Doc. 1, ¶9). Critically missing from Plaintiffs' Complaint are any allegations indicating that this order (which never came to pass) was even racially motivated. Specifically, Plaintiffs only quote Defendant Raybuck of saying "Evans and Fason you have to get up and go sit and eat your food in the dishwashing room." (*Id.*). Then, by mere conclusory statement, Plaintiffs assert that "C/O Raybuck actions were intentional and motivated by 'race' because he had 'Reservations' this was something that he had always wanted to say to the two (2) black culinary workers." (*Id.*). The Court is not persuaded. There are a host of possible reasons why Defendant had asked plaintiffs to eat elsewhere, and such a conclusory statement is insufficient to raise Plaintiffs'

claimed right to relief beyond the level of mere speculation. Accordingly, this Equal Protection claim is dismissed.

### D. Plaintiffs' Retaliation Claim

To state a prima facie case of retaliation in violation of the First Amendment, a plaintiff must establish the following elements: "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006); *see also Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001); *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 (3d Cir. 2000). To amount to retaliation, the adverse action must be "sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006) (quotation marks and citation omitted). "Although the elements of a First Amendment retaliation claim remain constant, the underlying concepts that they signify will vary with the setting—whether activity is 'protected' or an action is 'adverse' will depend on context...." *Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999). The fact of incarceration and the valid penological objectives of deterrence of crime, rehabilitation of prisoners, and institutional security justify limitations

on the exercise of constitutional rights by inmates. *See Pell v. Procunier*, 417 U.S. 817, 822-23 (1974). Thus, a prison inmate "retains [only] those rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Id.* at 822.

In their Complaint, Plaintiffs allege that Defendant retaliated against them for filing grievances on two occasions: (1) when Defendant attempted to fire Plaintiff Fason from the culinary staff for using the microwave; and (2) when Defendant held a meeting with the dining hall staff to tell them he would be stricter. (Doc. 1, ¶12). The filing of grievances has been viewed by certain courts, including this one, as a protected activity under the First Amendment. *Jackson v. Knapp, et al.*, Civ. No. 3:22-0138, Doc. 39, at *37 (M.D. Pa. Oct. 30, 2024); *see also Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). However, as explained above, there must also be a retaliatory action sufficient to deter a person of ordinary firmness from exercising his First Amendment rights and a causal link between the constitutionally protected conduct and that retaliatory action. *Thomas*, 463 F.3d at 296. Neither of which are present here.

First, the "attempted" firing never came to pass. Rather, Plaintiff Fason was told by his supervisor that he was not fired and asked to return to work. (Doc. 1, ¶12). Thus, this attempted firing amounts to nothing more than a

statement or a verbal threat. Same goes for the threat of stricter treatment. Supervisor Smitey capped such threat of any teeth when he told Defendant "he has no authority over culinary workers or operations." (*Id.*, ¶14). "Statements and verbal threats, without action, cannot as a matter of law violate a prisoner's rights." *Ortiz v. Sopata, et al.*, Civ. No. 3:23-0214, Doc. 38, at *16 (M.D. Pa. Nov. 5, 2024) (citing *Rodriguez v. Wetzel*, 2015 WL 1033842 at *8 (W.D. Pa. 2015) ("it is well established that the use of words, no matter how violent, vulgar or unprofessional, is not actionable under 42 U.S.C. §1983")); *see also Dunbar v. Barone*, 487 Fed. Appx. 723 (3d Cir. 2012). Second, Plaintiffs failed to allege any facts showing that Defendant could have even known about the grievances before either the microwave incident or the staff meeting. Specifically, the grievance filing of Plaintiff Fason and his "attempted" firing occurred on the exact same date. (Doc. 1, ¶¶11, 12). As correctly noted by Defendant, there is no indicia of possibility that Plaintiff Fason filed his grievance, the grievance coordinator received it, and then the coordinator informed Defendant of it prior to the 2:40 p.m. altercation. Plaintiffs' assertions rest between the worlds of near impossibility and mere speculation. In the same vein, there is no indication beyond mere speculation whether the grievances, filed on August 8, 2022, the same day of the staff meeting, were filed far enough in advance for the grievance

- 17 -

coordinator to retrieve such grievances and then notify Defendant of their existence. The alleged retaliator must have been aware of the protected speech to take action in response, *Ambrose v. Township of Robinson*, 303 F.3d 488, 494 (3d Cir. 2002), and Plaintiffs have failed to show such awareness. Third, Plaintiffs' allegation that Defendant's dining hall speech was directly addressed to them is mere speculation. Based on the Complaint, Defendant delivered his speech to the entire staff of "over 50 culinary inmates and stewards." (Doc. 1, ¶14). For the foregoing reasons, Plaintiffs' retaliation claim is dismissed.

## IV.    <u>CONCLUSION</u>

Based on the foregoing, the court will **GRANT** Defendant's motion to dismiss (Doc. 18), **DENY** Plaintiffs' motion to strike (Doc. 23), **DENY** Defendant's motion to stay discovery pending motion to dismiss as moot (Doc. 29), and **DENY** Plaintiffs' motions for summary judgment (Docs. 35 and 37). An appropriate order follows.


<u>*s/ Malachy E. Mannion*</u>
**MALACHY E. MANNION**
**United States District Judge**

**DATE: November 7, 2024**
23-1931-01

- 18 -